[Civ. No. 23048.   Second Dist., Div. Two.   Nov. 24, 1958.]

RICHARD MORRIS, as Administrator, etc., Respondent, v. E. SHEPARD DRUBIN, Appellant.

Samuel A. Miller and Norman Pittluck for Appellant.

David J. Sachs for Respondent.

ASHBURN, J.—Judgment having been rendered against appellant Drubin for $17,734.66 plus interest and costs in favor of Richard Morris, as administrator of estate of Russell Smith, deceased, Drubin went into voluntary bankruptcy. He listed Morris as his only creditor, Morris proved a claim on the judgment, made no objection to a discharge and Drubin was duly given his discharge in bankruptcy. After a year had

elapsed he moved the superior court to cancel and discharge the judgment pursuant to section 675b, Code of Civil Procedure,[1] on the ground that the debt had been discharged through bankruptcy. The motion was denied and Drubin appeals from that order.

The controlling question upon this appeal is whether the judgment was based upon a wilful and malicious conversion of certain bonds and hence not dischargeable through bankruptcy. (11 U.S.C.A. § 35.)

The complaint upon which the judgment was rendered consisted of one common count for money had and received; the answer contained only denials. The findings dispose of the formal issues re money had and received and then deal with the underlying facts. They show that Russell Smith was the owner of United States Government bonds of face value of $17,500 (apparently bearer bonds). They were in the possession of one George Duncan. Shortly prior to August 3, 1948, Samuel Small inquired on behalf of Duncan whether Drubin would arrange to cash the bonds and deliver $14,000 to Duncan out of the proceeds. Drubin agreed to do so and Small put him in contact with Duncan. About August 3rd Drubin received the bonds from Duncan and placed them for sale in his own name through a bank. The bonds were thereafter sold by the bank on August 3, 1948, for $17,734.66 and the proceeds received by Drubin. He then delivered $14,000 to Duncan and $1,000 to Small, keeping $2,734.66 for himself. All these things were done without the knowledge, consent or authority of Smith, the owner of the bonds.

Paragraph IX of the findings says: "That neither the defendant, E. SHEPARD DRUBIN, nor the defendant, SAMUEL SMALL, was a bona fide purchaser or a holder in any other capacity of said bonds in good faith or for value." Duncan

---

[1]Code Civ. Proc., § 675b: "At any time after one year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, or if rendered in a court not of record, to the court of which it has become a judgment by docketing it, or filing a transcript thereof, for an order directing the judgment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment or the debt upon which such judgment was recovered, an order must be made directing said judgment to be canceled and discharged of record; and thereupon the clerk of said court shall cancel and discharge the same by marking on the docket thereof if there is a docket, otherwise on the register of actions, that the same is canceled and discharged by order of the court, giving the date of entry of the order of discharge. . . ."

was not a party to the action and his name is significantly omitted from the quoted paragraph. This leaves him in presumably lawful possession of the bonds before their delivery to Drubin. Duncan's sale of same through Drubin doubtless was a conversion, probably willful and malicious so far as Duncan was concerned. But it is not every conversion that falls in that class. (*Royal Indemnity Co.* v. *Sherman*, 124 Cal. App.2d 512, 517 [269 P.2d 123, 42 A.L.R.2d 890]; *Culp* v. *Signal Van & Storage*, 142 Cal.App.2d Supp. 859, 862 [298 P.2d 162].) A sale by Drubin in the bona fide belief that Duncan was the true owner would be a conversion but not a willful or malicious one. It is not shown that Drubin knew anything about the true ownership. While the transaction is subject to suspicion because Duncan was seeking to obtain only $14,000 out of government bonds of face value of $17,500, suspicion is not proof. It is conceivable that Duncan did not know their value and was in need of ready money; and that Drubin understood that to be the case. It must be assumed that Duncan was in lawful possession of the bonds. Although Drubin was guilty of conversion it cannot be said to have been willful or malicious.

The notice of motion to cancel the judgment was supported by two affidavits and stated that it would be based upon the notice and affidavits and "the records, papers and files in this proceeding" i. e., the one in which judgment had been rendered. Respondent interposed a counteraffidavit. No oral evidence was taken upon the motion. The affidavits do not go to the controlling question, whether this judgment was based upon conversion which was willful and malicious. Respondent argues that the court hearing the motion properly could go behind the judgment and examine the entire record, taking extrinsic evidence if necessary, in order to determine the true nature of the claim which resulted in the judgment (*Fitzgerald* v. *Herzer*, 78 Cal.App.2d 127, 130 [177 P.2d 364]), and that the court had a right to consider the depositions and the evidence at the trial. But the transcript upon the instant appeal does not include the last mentioned matters, and it carries the judge's certificate that it contains "all of the papers, used or considered in the determination of the matter appealed from herein." If anything more were needed the presumption of rule 52 would be enough—"that it includes all matters material to a determination of the points on appeal."

Appellant contends that, his discharge in bankruptcy

470

having been presented as a part of his moving papers, the burden rested upon respondent to show that the judgment was not one dischargeable in bankruptcy. This doubtless is the law. (1 Collier on Bankruptcy, 14th ed., § 17.31, p. 1669; 8 Remington on Bankruptcy, 6th ed., § 3315, p. 171; *Kreitlein* v. *Ferger,* 238 U.S. 21, 26 [35 S.Ct. 685, 59 L.Ed. 1184]; *Whelan* v. *United States Guarantee Co.,* (D.C.) 252 F.2d 851, 852; *Emigh* v. *Lohnes,* 21 Wn.2d 913 [153 P.2d 869, 870]; *Lawrence* v. *Wischnowsky,* 344 Ill. App. 346 [100 N.E.2d 816, 818]; *New York Credit Men's Assn.* v. *Miller,* 17 N.Y.S.2d 538; *Tyler* v. *Jones County Bank,* 78 Ga.App. 741 [52 S.E.2d 547, 549]; *Freedman* v. *Cooper,* 126 N.J.L. 177 [17 A.2d 609, 610].) And respondent has not sustained that burden.

Appellant also claims estoppel on the part of respondent. In view of the conclusion that the order must be reversed it appears unnecessary to discuss the question of estoppel further than to say that it is not well founded.

The order denying motion to cancel and discharge judgment is reversed.

Fox, P. J., and Herndon, J., concurred.